# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MITCHELL STEVENS (#78189)**

**VERSUS**

**BURL CAIN, ET AL.**

**CIVIL ACTION**

**NO. 14-204-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 23, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MITCHELL STEVENS (#78189)**

**VERSUS**

**BURL CAIN, ET AL.**

**CIVIL ACTION**

**NO. 14-204-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against numerous defendants, complaining that his constitutional rights were violated when the plaintiff was forced to undergo tuberculosis testing in violation of his religious beliefs. He prays for monetary, declaratory, and injunctive relief.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is proceeding *in forma pauperis* or is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995).

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to

dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made any time, before or after service or process and before or after an answer is filed, if the court determines that the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2) and *Green v. McKaskle*, 788 F.2d 1116, 1999 (5th Cir. 1986).

The plaintiff alleges the following in his Complaint: On October 8, 2013, the plaintiff was called out from his housing unit for an annual tuberculosis ("T.B.") test. The defendant claims that his religious beliefs require him to refrain from putting any substances into his body other than food and liquids for thirst; therefore, the plaintiff told the nurse that he refused due to his religious beliefs. The nurse offered various explanations as to why the plaintiff was required to undergo T.B. testing, but the plaintiff again refused. The nurse then made a call, and defendant Captain William Rosso arrived. The nurse then informed the plaintiff that he would be physically restrained and the testing would be performed. The nurse informed the plaintiff that everyone was required to undergo T.B. testing by law, but the plaintiff again refused. Defendant Rosso asked the nurse if she wanted the plaintiff to be restrained, but the nurse informed defendant Rosso that a court order would be required in order to do so.

The plaintiff was then taken by defendant Rosso to the Education Building, where defendant Col. Cruz and defendant Maj. Shelton Scales were waiting. The plaintiff was again advised by the defendants that T.B. testing was required by law. The plaintiff again refused and

the defendants agreed that the plaintiff should be confined, restrained and the testing administered. The plaintiff was placed in solitary confinement.

On October 10, 2013, the plaintiff was taken before a disciplinary board, consisting of defendants Lt. Col. Chad Orbra and Classification Officer Fairchild, for aggravated disobedience and failure to obey a direct verbal order. The plaintiff informed the disciplinary board of his religious objection to the testing, but was found guilty and sentenced to 30 days in the working cell block, suspended for 30 days, and the plaintiff was returned to solitary confinement. The plaintiff was advised by defendant Orbra that he would be physically restrained and forced to undergo the testing.

That night the plaintiff drafted a grievance regarding forced annual T.B. testing, and his religious objection to the same. The grievance was received on or about November 17, 2013. On November 25, 2013, defendant Orbra called the plaintiff into an office and made several verbal threats of physical violence if the plaintiff failed to consent to the testing. On December 2, 2013, the plaintiff was called to a table at breakfast to meet with defendants Orbra, Rosso, and Scales. The defendants asked if the plaintiff intended to withdraw his grievance. When the plaintiff responded in the negative, the defendants began to "a barrage of verbal abuse." The defendants then ask defendant Nurse Melanie Barton to come to perform the testing, but she refused.

On December 12, 2013, the plaintiff was informed by defendant Rosso that he had made arrangements for the plaintiff to undergo T.B. testing the following day but the testing did not occur. On December 16, 2013, defendant Rosso kept the plaintiff in from work and sent the plaintiff to the treatment center. The gate guard informed the plaintiff that there was not a scheduled appointment for him and sent the plaintiff back to his dorm. Defendant Rosso was

enraged, and ordered that the plaintiff return to the gate for transport. Defendant Rosso order the gate guard to add the plaintiff to the roster.

The plaintiff was taken to the treatment center where he encountered defendant Nurse Sherwood Poret. Defendant S. Poret inquired as to why the plaintiff was refusing the T.B. testing. The plaintiff informed Defendant S. Poret of his religious objection to the testing, but defendant S. Poret stated that the testing would be administered the following day.

On December 17, 2013, the plaintiff was again removed from the work line and taken to the Education Building. Defendants Warden Chad Mansinni, Col. Robinson, Orbra, Scales and Rosso were present. The plaintiff was verbally harassed by defendants Orbra, Scales, and Rosso. Defendant Robinson did not make any threats, but agreed that the plaintiff was required to undergo T.B. testing. Defendant Mansinni also made no threats but informed the plaintiff that the T.B. testing would be performed in the near future.

Defendants Barton, Nurse Amy Zaunbracher, and S. Poret then arrived, and discussed with the guards how to force the plaintiff to undergo testing. The plaintiff was then returned to extended lockdown. On December 18, 2013, the plaintiff amended his grievance to include the events which occurred since the filing of his original grievance.

On December 19, 2013, the plaintiff was taken before a disciplinary board consisting of defendant Orbra and defendant Megan Shipley, for failure to obey a direct order. The plaintiff was found guilty and sentenced to a quarters change to the working cell block, and to undergo T.B. testing. The plaintiff informed the board that T.B. testing was not an authorized sanction and that he intended to appeal.

On December 20, 2013, the plaintiff was placed in restraints. His hands were shackled to his waist and shackles were places on his ankles. He was placed in a shower. Defendant Warden Orville Lamartiniere appeared with four officers dressed in baseball equipment and riot

gear. Defendant Lamartiniere was also accompanied by defendants Barton, Zaunbracher, S. Poret, and Mansinni. Defendant S. Poret had a needle in his hand and ordered the plaintiff to come to the bars for testing. The plaintiff refused and defendant Lamartiniere ordered the plaintiff to move to the corner of the shower and get on his knees. Two of the officers, defendant Lt. Pigeon and Staff Sgt. Boudreaux, placed the plaintiff in a choke hold while the other two officers held the plaintiff's arms. Defendant S. Poret then performed the Mantoux T.B. skin testing. The plaintiff thereafter refused medical treatment although he was in great pain.

On December 23, 2013, the plaintiff was taken before a disciplinary board. The plaintiff was informed by defendant Robison that a rehearing regarding the write up by defendant Orbra would need to be had due to technical difficulties with the audio recording. On December 26, 2013, the plaintiff was found guilty of "refusal" by defendant Lamartiniere. The plaintiff's unspecified sanction continued through the date of the filing of his Complaint.

The plaintiff's allegations fail to state a claim cognizable in this Court. First, as to any claims the plaintiff may be asserting against the defendants in their official capacities, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's § 1983 claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's claim for monetary damages and injunctive relief asserted against the defendants in their individual

capacities remain viable because such claims are not treated as a suit against the state. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claim that the T.B. testing was performed in violation of his religious beliefs, the Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits conduct which unreasonably impinges upon the free exercise of an inmate's religious beliefs. While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to reasonable restrictions and limitations necessitated by penological goals. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987). A prison action or regulation that impinges upon an inmate's First Amendment constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, *supra*, 482 U.S. at 89.

RLUIPA provides that government officials may not impose a substantial burden on the religious exercise of a person confined to an institution unless that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a). Under RLUIPA, the plaintiff bears the initial burden of proving that a challenged government action "substantially burdens" his "religious exercise." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008). If the plaintiff meets that burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Id*. "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Id*. at 612. A government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to

significantly modify his religious behavior and significantly violate his religious beliefs." *Id*. at 613, *quoting Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Whether the government action or regulation imposes a substantial burden on an adherent's exercise requires a case-by-case, fact-specific inquiry. *Id*. Although RLUIPA imposes strict scrutiny upon the imposition of certain religious limitations upon prisoners, the drafters of the statute were mindful that discipline, order and security are urgent in penal institutions, and they therefore anticipated that courts would apply the RLUIPA test "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *See Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

"A court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004) (internal quotation marks and citation omitted). Due regard also must be given to the decisions of prison officials, because " 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Turner*, 482 U.S. at 89 (omission and alteration in original) (*citing Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)).

Prisons have a "compelling" interest in preventing the spread of tuberculosis, a highly contagious and deadly disease. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997). Thus, prison policies of forcibly testing and treating inmates for tuberculosis and mandating isolation for non-compliant inmates have been consistently held constitutional. *McCormick,* 105 F.3d at 1062 fn. 1 *citing Karolis v. New Jersey Dept. Of Corrections,* 935 F. Supp. 523, 527–28 (D.N.J. 1996) (noting that TB is "likely to spread easily and rapidly" and therefore the state has "strong interest" in "diagnosing and treating inmates") and fn. 2 *citing Mack v. Campbell,* 948

F.2d 1289, 1991 WL 243569 (6th Cir. 1991) (TB screening program did not violate the constitution nor did placement in administrative segregation for refusing tuberculosis screening test), *Rhinehart v. Gomez,* 1995 WL 364339, *3-4 (N.D. Cal. June 8, 1995) (prison policy of involuntary or forced testing and treatment for tuberculosis held constitutional) and *Karolis v. New Jersey Dept. of Corrections,* 935 F. Supp. 523, 527–28 (D.N.J. 1996) (involuntary administration of tuberculosis test to prisoner upheld against challenge under Religious Freedom Restoration Act because there is a compelling state interest in stopping the spread of tuberculosis).

In *McCormick v. Stalder,* 105 F.3d 1059, the plaintiff therein complained that his constitutional rights were violated due a prison policy requiring him to undergo prophylactic treatment due to a previous positive tuberculosis test. The district court dismissed the suit as frivolous, and the Court of Appeals for the Fifth Circuit affirmed, finding that the prison's interest in preventing the spread of tuberculosis, a highly contagious and deadly disease, is compelling. The Court further found that the interest in preventing the disease includes an interest in providing medical treatment for inmates infected with the disease, the prison policy at issue was a rational means of discharging the prison's duty to prevent tuberculosis and, citing to *Karolis v. New Jersey Dept. of Corrections,* 935 F. Supp. 523, 527-28 (D.N.J. 1996), found that there is no apparent alternative system of meeting the described objectives.

In *Karolis,* the plaintiff was offered a choice of either submitting to T.B. testing, which he considered to be an intrusive medical procedure prohibited by his religion, or suffering solitary confinement, administrative segregation, and loss of commutation time. While the Court determined that this choice created a substantial burden on the plaintiff's First Amendment free exercise rights, the court went on to find that the state had a compelling interest in preventing the spread of tuberculosis, and that goal is easily achieved through the Mantoux skin test, which is

the most effective and least restrictive method of determining whether a person is infected with T.B. Accordingly, the Court dismissed the plaintiff's claims on summary judgment. See *Karolis v. New Jersey Dept. of Corrections,* 935 F. Supp. 523, 530 (D.N.J. 1996).

In the instant matter, while the plaintiff's First Amendment free exercise rights might be substantially burdened by forced T.B. testing, it is widely accepted that the prison has a compelling interest in preventing the spread of tuberculosis, and the Mantoux skin test is the least restrictive means of furthering the prison's compelling interest.[1] *See also Hebert v. Neustrom*, 2009 WL 2356450 (W.D. La. July 29, 2009) (dismissing a claim regarding T.B. testing as frivolous due to state's compelling interest in preventing the spread of tuberculosis); *Ramsey v. Tucker,* 2015 WL 4067911 (W.D. La. July 1, 2015) (same); *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464 (S.D. Ohio 1998) (granting dispositive motion dismissing claim that forced T.B. testing violated the plaintiff's rights under the First Amendment); *Neal v. Watts,* 2008 WL 748321 (D.D.C. March 17, 2008) (same); *Whitfield v. Goins,* 2014 WL 4825916 (S.D. Ill. Sept. 29, 2014) (same); and *Morrow v. Hughey,* 2015 WL 4170663 (E.D. Ark. July 6, 2015) (same). Accordingly, the plaintiff's complaint fails to state a claim for a violation of his First Amendment free exercise rights.

Turning to the plaintiff's excessive force claim, use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's

---

[1] *See Karolis v. New Jersey Dept. of Corrections*, 935 F. Supp. 523 (D.N.J. 1996) for a detailed analysis of the spread of tuberculosis, and the inadequacy of other means of testing for tuberculosis.

prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. Other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The plaintiff's Complaint is devoid of any allegations which would tend to show that force was applied maliciously and sadistically for the purpose of causing harm. Rather, the plaintiff's allegations establish that force was applied in order to administer the T.B. testing in accordance with the prison's mandatory policy after the plaintiff refused testing. As such, the plaintiff has failed to state an excessive force claim.

Turning to the plaintiff's claims regarding a violation of his due process rights in connection with his administrative remedy and disciplinary proceedings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by

the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id.* at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation"); and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights. *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force. Normally, however, the Due Process Clause, itself, does not afford an

inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484. In the instant case, the plaintiff was sentenced to a custody status change. This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment. *See Dickerson v. Cain,* 241 F. App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life"). The plaintiff's claim here likewise fails to make such a showing, and should be dismissed for failure to state a claim upon which relief may be granted.

The plaintiff also asserts that certain defendants conspired to discipline the plaintiff until he agreed to T.B. testing. These allegations are conclusory, and mere conclusory allegations of a conspiracy to violate the plaintiff's constitutional rights are not cognizable under § 1983. *See Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986); *Decker v. Dunbar*, 633 F. Supp. 2d 317, 358 (E.D. Tex. 2008). The plaintiff's complaints that he was the object of verbal abuse, harassment, and threats by certain defendants, without more, are also not actionable under § 1983. *See Orange v. Ellis,* 348 F. App'x. 69, 72 (5th Cir. 2009); and *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983).

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that this action be dismissed, with prejudice, as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[2]

Signed in Baton Rouge, Louisiana, on May 23, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] The plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."